**Electronically Filed
Supreme Court
SCWC-18-0000211
17-APR-2020
09:11 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

DL,
Petitioner/Plaintiff-Appellant,

vs.

CL,
Respondent/Defendant-Appellee.

_____

SCWC-18-0000211

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000211; FC-D. NO. 16-1-1014)

APRIL 17, 2020

RECKTENWALD, C.J., NAKAYAMA, MCKENNA, POLLACK,
AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

This appeal arises from rulings concerning child custody
and relocation and disqualification of counsel made by the

Family Court of the First Circuit ("family court")[1] in a divorce proceeding.

DL asserts that in its February 28, 2019 summary disposition order ("SDO") the Intermediate Court of Appeals ("ICA") erred by (1)(a) considering the family court's April 26, 2018 amended findings of fact and conclusions of law regarding child custody despite its entry of some findings of fact regarding child custody before the March 26, 2018 notice of appeal, as the family court was without jurisdiction to enter additional findings after the notice of appeal had been filed; and (b) not properly considering DL's arguments that even if the family court had jurisdiction to enter them, the April 26, 2018 findings and conclusions should be rejected; (2) affirming the family court's denial of its motion to disqualify CL's counsel and law firm; and (3) affirming the family court's grant of sole physical custody of the parties' minor children to CL and allowing CL to relocate the children to Arizona.

For the reasons explained below, the ICA did not err. We therefore affirm the ICA's May 3, 2019 judgment affirming the family court's (1) April 26, 2018 amended findings of fact, conclusions of law and order regarding: June 21, 2017 Order Re:

_____

[1] The Honorable Gale L.F. Ching presided.

Defendant's Motion for Pre-Decree Relief; March 13, 2016 Order Re: Evidentiary Hearing; and March 16, 2018 First Amended Order Re: Evidentiary Hearing; and (2) April 23, 2018 findings of fact, conclusions of law, and order regarding Plaintiff's Motion to Disqualify Counsel.

## II. Background

### A. Family court proceedings

DL and CL were married and had two children, who had yet to enter kindergarten as of the 2016 commencement of divorce proceedings. Before the divorce proceedings began, CL had moved to Arizona with the two minor children.

Various proceedings and hearings then took place in the family court, including DL's filing of a motion to disqualify counsel for CL and his law firm. DL contended disqualification was required because CL's law firm had hired a family law paralegal who had been employed by the law firm that previously represented DL in the divorce case. DL alleged the paralegal had participated in DL's case and was privy to privileged communications and other confidential information related to DL's case.

DL's prior law firm indicated that although the paralegal had not worked on DL's matter, DL's case was discussed during the firm's family law department monthly meetings in which the

paralegal participated, and that the paralegal had received email regarding DL's case. CL's new law firm attested, however, that it had taken appropriate steps to screen the paralegal from any work or information related to DL's case after the paralegal's employment, including filtering the mail to ensure that pleadings regarding the matter would not be given to the paralegal, that the paralegal's computer could not access any of the files in the case, and by instructing staff to exclude the paralegal from all communications regarding the case. On October 17, 2017, the family court denied DL's motion to disqualify. The family court did not enter findings of fact or conclusions of law in the order denying disqualification.

Meanwhile, other proceedings and hearings ensued regarding other issues in the divorce, including child custody. On March 13, 2018, the family court entered its "Order Re: Evidentiary hearing" concerning hearings it had conducted on eleven dates from July 31, 2017 to January 8, 2018. These hearings addressed not only legal and physical custody of the children, but also child support, alimony, property division as to certain properties, debts, and attorney fees.

With respect to legal and physical custody of the children only, the March 13, 2018 order contained a section entitled "findings of fact," reflecting twelve findings of fact within

4

two pages of the seventeen-page order.  The twelve findings of fact were as follows:

> 1. [DL] and [CL] were married [in] 2008,
> 2. [DL] and [CL] are the natural parents of the minor [children],
> 3. [DL] and [CL] are [] employable,
> 4. Previously, [DL] and [CL] were living and working in California and decided to relocate to Hawaii,
> 5. In approximately October 2015, [DL] and [CL] moved to Hawaii where they lived in a cottage [] owed [sic] by [DL]'s parents,
> 6. During the course of the marriage, [DL] verbally abused [CL] and engaged in emotional and physical acts of violence in the presence of the [CL] and the [m]inor [c]hildren,
> 7. On or about July 9, 2016 [CL] fled with the [m]inor [c]hildren to Arizona in order to protect herself and the [m]inor [c]hildren,[2]
> 8. [CL] presently lives in Arizona and has obtained [] employment [],
> 9. [DL] presently lives in Hawaii and has obtained [] employment [],

---

[2]    HRS § 571-46(a)(9) (2018) provides:

> (9) In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that family violence has been committed by a parent raises a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence. In addition to other factors that a court shall consider in a proceeding in which the custody of a child or visitation by a parent is at issue, and in which the court has made a finding of family violence by a parent:
> (A) The court shall consider as the primary factor the safety and well-being of the child and of the parent who is the victim of family violence;
> (B) The court shall consider the perpetrator's history of causing physical harm, bodily injury, or assault or causing reasonable fear of physical harm, bodily injury, or assault to another person; and
> (C) If a parent is absent or relocates because of an act of family violence by the other parent, the absence or relocation shall not be a factor that weighs against the parent in determining custody or visitation;
> . . . .

10. At present, [one of] the minor child[ren] is attending [an] [e]lementary [s]chool and the [other] minor child []is attending [a pre] [s]chool,
11. [DL] has sought counseling for domestic violence, parenting, etc. [sic] and does not now pose a danger nor a safety risk to the [m]inor [c]hildren, and
12. The [p]arties are unable to effectively communicate for the benefit of the [m]inor [c]hildren.

The family court awarded joint legal custody to DL and CL. As CL had relocated to Arizona before the divorce proceedings, the family court awarded CL sole physical custody.

On March 16, 2018, the family court entered a "First Amended Order Re: Evidentiary Hearing" without amending the findings of fact relating to child custody or its custody orders contained in the March 13 order. (The March 13 and 16 orders are collectively referred to as the "March Orders.") Neither of the March Orders contained a section entitled "Conclusions of Law."

**B.    Family court and ICA proceedings after notice of appeal**

DL filed a notice of appeal of the March Orders as well as all prior rulings upon which they were predicated[3] on March 26, 2018. On April 3, 2018, the family court ordered both parties

---

[3]    According to DL, these included, but were not limited to, the (1) "Order Re: Plaintiff's Motion to Disqualify Counsel, Filed October 6, 2017," filed October 17, 2017; (2) "Order Re: Defendant's Motion and Declaration for Pre-Decree Relief Filed June 7, 2017," filed June 21, 2017; (3) "Order Granting In Part and Denying in Part Motion and Declaration for Pre-Decree Relief, Filed October 21, 2016," filed December 16, 2018; (4) "Order Granting In Part and Denying in Part Plaintiff's Motion to Permit Visitation in Hawaii, Filed December 8, 2016," filed December 16, 2016; and (5) "Order, Exhibit A," filed September 22, 2016.

to submit proposed findings of fact and conclusions of law pursuant to Hawai'i Family Court Rules ("HFCR") Rule 52(a) (2015) by April 20, 2018.

Meanwhile, on April 9, 2018, in the family court, counsel for DL filed a motion to stay enforcement of a portion of the March Orders that required a property to be listed for sale.

Pursuant to the family court's April 3, 2018 order, on April 20, 2018, counsel for CL submitted four separate proposed findings of fact and conclusions of law regarding the various evidentiary hearings and matters addressed in the March Orders and the disqualification motion. On the same date, counsel for DL submitted 484 proposed findings of fact and 48 conclusions of law, not including subparts.

On April 23, 2018, the family court entered four separate findings of fact and conclusions of law, adopting verbatim the proposals submitted by CL's counsel. The first of the four contained 91 findings of fact and 26 conclusions of law primarily focused on child custody and relocation, but which also discussed other subjects included in the March Orders ("4/23/18 FOFs/COLs re child custody"). The fourth concerned

DL's motion to disqualify counsel ("4/23/18 FOFs/COLs re motion to disqualify").[4]

At 1:32 p.m. on April 26, 2018, the family court entered a divorce decree. At 3:28 p.m. on April 26, 2018, the family court entered a document entitled "first amended findings of fact and conclusions of law," which replaced the first of the four findings of fact and conclusions of law it had entered on April 23, 2018, which basically concerned child custody and relocation. The "first amended findings of fact and conclusions of law" did not amend the 91 findings of fact and 26 conclusions of law entered on April 23, 2018; it merely added a child support guidelines worksheet and property division chart as attachments ("4/26/18 FOFs/COLs re child custody").

The child custody and relocation rulings within the 4/26/18 FOFs/COLs re child custody and the 4/23/18 FOFs/COLs regarding DL's motion to disqualify are the subject of these certiorari proceedings.[5]

---

[4]   The second of the four findings of fact and conclusions of law concerned the family court's September 22, 2016 order on DL's motion for pre-decree relief. The third concerned the family court's December 16, 2016 order regarding another motion for pre-decree relief filed by DL and a December 8, 2016 order regarding DL's motions to permit visitation in Hawaiʻi.

[5]   On July 5, 2018, DL filed another notice of appeal, which is the subject of CAAP-18-0000536.

As noted earlier, the March Orders contained 12 cursory findings regarding child custody and relocation and contained no "conclusions of law." As to custody issues, the 4/26/18 FOFs/COLs re child custody provided additional factual findings supporting the family court's custody decisions in the March Orders. It also contained conclusions of law. The 4/26/18 FOFs/COLs re child custody did not, however, substantively modify the findings of fact and conclusions of law contained in the original April 23, 2018 findings and conclusions and also did not modify substantive rulings regarding custody and relocation contained in the March Orders or in the April 26, 2018 divorce decree.

On May 9, 2018, CL, appearing pro se, filed a motion to dismiss DL's appeal. CL argued that because the divorce decree was not filed until April 26, 2018, DL's March 26, 2018 notice of appeal was premature.

On May 16, 2018, DL filed a memorandum opposing CL's motion to dismiss. DL argued that because the family court's March Orders contained findings of fact, they had the requisite degree of finality to be appealable, citing to In re Doe, 102 Hawai'i 246, 250, 74 P.3d 998, 1002 (2003) ("In [family court] cases, an order possesses the requisite finality if it determines the ultimate rights of the parties, with respect to distinct matters

9

which have no bearing on other matters left for consideration.") (internal quotation marks omitted). DL contended that the ICA therefore had appellate jurisdiction over DL's appeal from the March Orders.

On June 4, 2018, the ICA entered an order denying CL's motion to dismiss appeal. It rejected both parties' arguments and ruled that dismissal of the appeal was not appropriate based on Hawai'i Rules of Appellate Procedure ("HRAP") Rule 4(a)(2) (2016), which provides, "[i]f a notice of appeal is filed after announcement of a decision but before entry of the judgment or order, such notice shall be considered as final immediately after the time the judgment or order becomes final for the purpose of appeal." The ICA ruled that based on HRAP Rule 4(a)(2), the filing of the family court's April 26, 2018 divorce decree, entered after DL filed his March 26, 2018 notice of appeal, allowed it to take jurisdiction over DL's appeal. The ICA therefore concluded that it had appellate jurisdiction over DL's appeal from the filing of the April 26, 2018 divorce decree pursuant to HRS § 571-54 (2006).

DL's opening brief was filed on July 25, 2018, and it asserted two points of error:

> Point of Error Number One: Whether the Family Court erred in awarding CL sole physical custody of the parties' Children and permitting their relocation to Arizona because the evidence did not establish that it was in the Children's best interest to relocate to Arizona or away

10

from [DL], there was neither a finding of family violence made against DL nor any evidence of family violence, the Family Court erred in relying on the Custody Evaluator's purported recommendation in favor of relocation, and the Family Court should not have relied on evidence outside the record in deciding custody and relocation. It was also error for the Family Court to rubber-stamp all findings of fact, conclusions of law, and re-written orders submitted by CL's attorney.

Point of Error Number Two: Whether the Family Court erred in denying DL's motion to disqualify CL's attorney given that both her attorney and his law firm were disqualified from representing CL after they hired a paralegal formerly employed by DL's former counsel who had worked on this case and had actual exposure to significant privileged communications and other confidential information related to the case, and given that CL's attorney neither informed DL that the paralegal had been hired nor obtained DL's consent to waive the actual conflict of interest and disqualification, and given that an effective "screen," even if permitted, cannot be accomplished under the circumstances. Subsumed within the error is the court's ruling striking unspecified testimony of [the attorney from DL's prior law firm], related to his refreshed recollection further confirming the paralegal's actual exposure to confidential information.

With respect to the family court's grant of sole physical custody to CL, DL continued to argue that the family court erred when it used HFCR Rule 52 to request additional findings of fact and conclusions of law where the family court had already entered substantive findings in its March Orders. In summary, DL also argued that the family court erred in awarding CL sole physical custody of the children and permitting their relocation to Arizona because the evidence did not establish that it was in the children's best interests to relocate to Arizona or away from DL.

With respect to the disqualification issue, in summary, DL

11

argued that pursuant to Hawai'i Rules of Professional Conduct ("HRPC") Rule 1.10 (2014) and case law from other jurisdictions, CL's attorney and law firm should have been disqualified from representing CL based on the paralegal's transfer of employment.

In summary, CL's September 4, 2018 answering brief argued that the family court's custody decisions should be affirmed based on the voluminous testimony and evidence in the case. CL further argued that the family court's decision to deny DL's motion to disqualify was not in error because the new law firm had appropriately screened the paralegal upon the transfer of employment.

DL's September 28, 2018 reply brief repeated the argument that the family court's findings of fact and conclusions of law after the notice of appeal should not be considered by the ICA. Citing Kakinami v. Kakinami, 127 Hawai'i 126, 143, 276 P.3d 695, 712 (2012), DL contended that once a notice of appeal is filed, a family court generally loses jurisdiction to modify a previously entered order.

**C.  ICA ruling**

In its February 28, 2019 SDO, the ICA affirmed the 4/26/18 FOFs/COLs re child custody as well as the 4/23/18 FOFs/COLs re the motion to disqualify. DL v. CL, CAAP-18-0000211 (App. Feb. 28, 2019) (SDO). The ICA did not specifically address DL's

12

contention that once a notice of appeal is filed, the family court loses jurisdiction to modify a previously entered order and was therefore without jurisdiction to enter the 4/26/18 FOFs/COLs. (It had already ruled in its June 4, 2018 order denying CL's motion to dismiss the appeal as premature that the appeal was not effective until the filing of the April 26, 2018 divorce decree.)

Regarding the family court's child custody decisions, citing Fisher v. Fisher, 111 Hawai'i 41, 47, 137 P.3d 355, 361 (2006), the ICA noted that under HRS § 571-46, the sole issue in a custody determination is the child's best interests, and concluded that the family court's custody decisions were supported by substantial evidence. DL, SDO at 7. The ICA noted that HRS § 571-46(b) sets forth a non-exclusive list of factors the court must consider in determining the best interests of children, and "the family court is granted broad discretion to weigh the various factors involved, with no single factor being given presumptive paramount weight, in determining whether the standard has been met[,]" quoting Fisher, 111 Hawai'i at 50, 137 P.3d at 364. DL, SDO at 3. The ICA also referred to the family court's factual findings regarding "family violence" and the effect of such findings on custody and relocation. See supra note 2 (quoting HRS § 571-46(a)(9)); DL, SDO at 3-11.

13

Regarding the disqualification issue, the ICA noted that HRPC Rule 1.10, which pertains to the imputation of conflicts of interest, does not necessarily prohibit representation by others in the law firm where the person prohibited from involvement in a matter is a nonlawyer. DL, SDO at 13-14 (citing HRPC Rule 1.10 cmt. 4). The ICA further noted the family court's finding that CL's law firm was aware from the outset that the paralegal had a conflict, had prohibited the paralegal from any work on or involvement in the matter, and had ensured that the paralegal would be effectively screened. DL, SDO at 15. The ICA ruled that, based on the record, it could not conclude that the family court abused its discretion in denying DL's motion to disqualify. DL, SDO at 16.

Accordingly, the ICA affirmed the family court and entered its judgment on appeal on May 3, 2019.

## C.  Certiorari application

DL raises the following three questions on certiorari:

> 1.  Whether the ICA erred by considering and ultimately approving FOF-COLS drafted exclusively by CL's counsel, and re-written interim orders drafted by CL's counsel, that were entered verbatim, in their entirety, obviously without any meaningful review of their propriety or accuracy, and creating an improper moving target after DL filed his notice or appeal.
>
> 2.  Whether the ICA erred by affirming the family court's order denying DL's motion to disqualify CL's counsel.
>
> 3.  Whether the ICA erred in affirming the family court's order awarding to CL sole physical custody of the parties'

14

children and allowing CL to relocate the children to
Arizona.

### III. Standards of Review

**A.   Family court decisions**

Generally, the "family court possesses wide discretion in
making its decisions and those decisions will not be set aside
unless there is a manifest abuse of discretion."  In Interest of
Jane Doe, 84 Hawai'i 41, 46, 928 P.2d 883, 888 (1996) (internal
quotation marks and citation omitted).  "Under the abuse of
discretion standard of review, the family court's decision will
not be disturbed unless the family court disregarded rules or
principles of law or practice to the substantial detriment of a
party litigant[, and its] decision clearly exceed[ed] the bounds
of reason."  Id. (internal quotation marks and citation omitted,
alterations in original).

**B.   Findings of fact and conclusions of law**

A family court's findings of fact are reviewed on appeal
under the "clearly erroneous" standard.  Fisher, 111 Hawai'i at
46, 137 P.3d at 360.  "A [finding of fact] is clearly erroneous
when (1) the record lacks substantial evidence to support the
finding, or (2) despite substantial evidence in support of the
finding, the appellate court is nonetheless left with a definite
and firm conviction that a mistake has been made."  Id.
"'Substantial evidence' is credible evidence which is of

sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id.

"The family court's [conclusions of law] are reviewed on appeal de novo, under the right/wrong standard." Id. (citation omitted). Conclusions of law are "not binding upon an appellate court and are freely reviewable for their correctness." Id. (citation omitted).

## C.   Credibility of witnesses

"[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001) (internal quotation marks and citation omitted).

## D.   Interpretation of court rules

The interpretation of court rules involve principles of statutory construction. State v. Choy Foo, 142 Hawaiʻi 65, 72, 414 P.3d 117, 124 (2018). This court's construction of court rules is guided by the following:

> First, the fundamental starting point for [rule]
> interpretation is the language of the [rule] itself.
> Second, where the . . . language [of the rule] is plain and
> unambiguous, our sole duty is to give effect to its plain
> and obvious meaning. Third, implicit in the task of [rule]
> construction is our foremost obligation to ascertain and
> give effect to the intention of the [promulgator], which is
> to be obtained primarily from the language contained in the
> [rule] itself. Fourth, when there is doubt, doubleness of
> meaning, or indistinctiveness or uncertainty of an
> expression used in a [rule], an ambiguity exists.

16

Id. (citations omitted).

## E.   Disqualification of counsel

> Appellate courts apply the abuse of discretion standard for reviewing a judge's denial of a motion for disqualification.  Under the abuse of discretion standard, the trial court may not be reversed by an appellate court unless the trial court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

Hussey v. Say, 139 Hawai'i 181, 185-86, 384 P.3d 1282, 1286-87 (2016) (internal citations and quotation marks omitted).

## IV.   Discussion

## A.   The ICA did not err by considering and approving the 4/26/18 FOFs/COLs re child custody

In the first question on certiorari, DL alleges the ICA erred by basing its appellate review on the 4/26/18 FOFs/COLs re child custody because (1) the family court was without jurisdiction to enter them after the notice of appeal had been filed; and (2) even if the family court had jurisdiction to enter the 4/26/18 FOFs/COLs re child custody after DL's notice of appeal, the ICA erred in not properly considering DL's arguments that they should be rejected because the family court adopted CL's submissions verbatim, suggesting the family court did not even read the submissions.  We address each subpart of the first question on certiorari below.

17

1.    **The family court had jurisdiction to enter the 4/26/18 FOFs/COLs re child custody**

    a.    **DL's March 26, 2018 notice of appeal was premature**

DL contends that the family court was divested of jurisdiction to enter the 4/26/18 FOFs/COLs re child custody because this court has stated "that once a party files a notice of appeal, a family court is generally divested of jurisdiction to proceed further on the matter," citing Kakinami, 127 Hawai'i at 143, 276 P.3d at 712.  As indicated in the ICA's June 4, 2018 order denying CL's motion to dismiss the appeal, however, DL's March 2, 2018 notice of appeal was actually premature.

In Eaton v. Eaton, 7 Haw. App. 111, 748 P.2d 801 (1987), the ICA ruled:

> Hawaii divorce cases involve a maximum of four discrete parts: (1) dissolution of the marriage; (2) child custody, visitation, and support; (3) spousal support; and (4) division and distribution of property and debts.  Black v. Black, 6 Haw. App. 493, 728 P.2d 1303 (1986).  In Cleveland v. Cleveland, 57 Haw. 519, 559 P.2d 744 (1977), the Hawaii Supreme Court held that an order which finally decides parts (1) and (4) is final and appealable even if part (2) remains undecided.  Although we recommend that, except in exceptionally compelling circumstances, all parts be decided simultaneously and that part (1) not be finally decided prior to a decision on all the other parts, we conclude that an order which finally decides part (1) is final and appealable when decided even if parts (2), (3), and (4) remain undecided; that parts (2), (3), and (4) are each separately final and appealable as and when they are decided, but only if part (1) has previously or simultaneously been decided; and that if parts (2), (3), and/or (4) have been decided before part (1) has been finally decided, they become final and appealable when part (1) is finally decided.

Eaton, 7 Haw. App. at 118-19, 748 P.2d at 805 (internal footnote omitted).

Thus, according to Eaton, the part (2) child custody order within the March Orders was not appealable until the divorce decree was entered on April 26, 2018.  The ICA properly denied CL's motion to dismiss the premature appeal because HRAP Rule 4(a)(2) provides that if a notice of appeal is filed before entry of a judgment or order, the notice shall be considered as filed immediately after the time the judgment or order becomes final for the purpose of appeal.  Therefore, the ICA properly concluded that it had appellate jurisdiction over DL's premature appeal pursuant to HRAP Rule 4(a)(2) as of the April 26, 2018 filing of the divorce decree.

DL maintains the ICA erred because an immediate appeal of the March Orders was authorized by HRS § 571-54, which allows an appeal "by any interested party, aggrieved by any order or decree of the court."  DL, however, ignores the remaining portion of the quoted sentence within HRS § 571-54, which provides, "An interested party, aggrieved by any order or decree of the court, may appeal to the intermediate appellate court for review of questions of law and fact upon the same terms and conditions as in other cases in the circuit court, and review shall be governed by chapter 602, except as hereinafter

19

provided."[6]  HRS § 571-54 (emphasis added).  As stated in In re

Doe, 102 Hawai'i 246, 74 P.3d 998 (2003):

> We have construed this language as indicating that HRS
> § 641-1 (1993)[] which defines the limits of appeals in
> civil actions and proceedings, likewise defines the limits
> of judgments, orders, or decrees in family court
> proceedings from which an appeal may lie.  Specifically, we
> have held that, under HRS § 571-54, we may hear
> appeals from only final orders, or decrees except as
> otherwise provided by law.

In re Doe, 102 Hawai'i at 249, 74 P.3d at 1001 (emphasis added)

(internal quotation marks omitted).

_____

[6]     HRS § 571-54 provides in relevant part:

> An interested party, aggrieved by any order or decree of
> the court, may appeal to the intermediate appellate court
> for review of questions of law and fact upon the same terms
> and conditions as in other cases in the circuit court, and
> review shall be governed by chapter 602, except as
> hereinafter provided.  Where the decree or order affects
> the custody of a child or minor, the appeal shall be heard
> at the earliest practicable time.
> . . . .
> The stay of enforcement of an order or decree, or the
> pendency of an appeal, shall not suspend the order or
> decree of the court regarding a child or minor, . . .
> unless otherwise ordered by the family court or by the
> appellate court after an appeal is taken.  Pending final
> disposition of the case, the family court or the appellate
> court, after the appeal is taken, may make such order for
> temporary custody as is appropriate in the
> circumstances.  If the appellate court does not dismiss the
> proceedings and discharge the child or minor, it shall
> affirm or modify the order of the family court and remand
> the child or minor to the jurisdiction of the court for
> disposition not inconsistent with the appellate court's
> finding on the appeal.
> . . . .

DL relies on language in Kakinami stating "that once a party files a notice of appeal, the [family] court is generally divested of jurisdiction to proceed further on the matter." Kakinami, 127 Hawai'i at 143, 276 P.3d at 712. Kakinami did not address a premature notice of appeal and entry of findings of fact and conclusions of law under HFCR Rule 52(a). Lowther v. Lowther, 99 Hawai'i 569, 57 P.3d 494 (App. 2002), also did not address the entry of findings of fact and conclusions of law pursuant to HFCR Rule 52(a) after a premature notice of appeal, and instead concerned the family court's entry of order regarding non-child custody matters while an appeal of prior decisions regarding those matters was pending. Lowther, 99 Hawai'i at 569-70, 578-79, 57 P.3d at 494-95, 503-04. Thus, these cases are completely distinguishable.

DL cites to no authority "otherwise providing by law" that, pursuant to the ICA's holding in Eaton, a divorce decree was not required to render the child custody decisions in the March Orders appealable. There was no order allowing an interlocutory appeal. Thus, pursuant to Eaton and HRAP Rule 4(a)(2), it was only upon the April 26, 2018 filing of the divorce decree that DL's appeal became effective. DL's premature March 26, 2018 notice of appeal therefore did not divest the family court of jurisdiction to enter its 4/23/18 FOFs/COLS re child custody.

21

The 4/26/18 FOFs/COLs did not amend the 4/23/18 FOFs/COLs re child custody, and merely added a child support guidelines worksheet and property division chart as attachments.

> **b.   In any event, HFCR Rule 52(a) required the family court to enter conclusions of law regarding child custody, as none had previously been entered**

The March Orders contained 12 findings of fact but no conclusions of law regarding the minor children's best interests regarding the family court's decision to award sole physical custody of the minor children to CL and to allow CL to remain in Arizona with the minor children.

HFCR Rule 52(a) provides as follows:

> **(a) Effect.** In all actions tried in the family court, the court may find the facts and state its conclusions of law thereon or may announce or write and file its decision and direct the entry of the appropriate judgment; except upon notice of appeal filed with the court, the court shall enter its findings of fact and conclusions of law where none have been entered, unless the written decision of the court contains findings of fact and conclusions of law.  To aid the court, the court may order the parties or either of them to submit proposed findings of fact and conclusions of law, where the written decision of the court does not contain the findings of fact and conclusions of law, within 10 days after the filing of the notice of appeal, unless such time is extended by the court.  Requests for findings are not necessary for purposes of review.  The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court.  If a decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

The plain language of HFCR Rule 52(a) therefore requires a family court to enter findings of fact and conclusions of law after a notice of appeal is filed, unless it has previously entered a written decision containing findings of fact and

22

conclusions of law.[7]  As stated by the ICA in State v. Gonsales,

91 Hawai'i 446, 984 P.2d 1272 (App. 1999), "upon the filing of an

appeal, the family court is mandated, where HFCR Rule 52(a) is

applicable, to enter written findings of fact and conclusions,

unless they were previously set forth in a written decision or

decision and order."  91 Hawai'i at 449, 984 P.2d at 1275.

Although the March 26, 2018 notice of appeal was premature,

HFCR Rule 52(a) would have required the family court to enter

conclusions of law regarding child custody at some point, as

none were contained in the March Orders.  The "best interests"

standard governs child custody decisions.  See HRS § 571-

46(a)(1) ("Custody should be awarded . . . according to the best

interest of the child . . . .").  Conclusions of law addressing

the "best interests" standard were first entered in the 4/23/18

FOFs/COLs re child custody (which were not amended by the

4/26/18 FOFs/COLs re child custody).  Thus, the March Orders did

not constitute "a written decision containing findings of fact

---

[7]     HFCR Rule 52(a) therefore differs from Hawai'i Rules of Civil Procedure ("HRCP") Rule 52(a)(2000), which requires that a circuit court enter findings of fact and conclusions of law in all actions tried without a jury before a final judgment allowing an appeal is filed.  HRCP Rule 52(a) provides in pertinent part:

> **(a)  Effect.** In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58 . . . .

and conclusions of law" that would have obviated the family

court's obligation to prepare conclusions as required by HFCR

Rule 52(a).[8]

> ## 2. The family court was not prohibited from adopting CL's proposed findings of fact and conclusions of law in their entirety

We now turn to the second subpart of DL's first question on

certiorari. DL asserts that even if the family court had

jurisdiction to enter the 4/26/18 FOFs/COLs re child custody,

the ICA erred in not properly considering DL's arguments that

they should be rejected because the family court adopted CL's

---

[8] DL also posits that because the family court had entered cursory findings of fact in its March Orders, it was prohibited from entering more detailed findings of fact after the March 26, 2018 notice of appeal. The March 26, 2018 notice of appeal was premature and did not become effective until the April 26, 2018 filing of the divorce decree. The 4/23/18 FOFs re child custody were entered before the filing of the divorce decree on 4/26/18, and the 4/26/18 FOFs re child custody entered a few hours after the divorce decree did not amend the 4/23/18 FOFs re child custody. In any event, HFCR Rule 52(a) does not prohibit a family court from entering supplemental findings after a notice of appeal as long as they do not substantively modify pre-appeal findings. Cf. Thomas-Yukimura v. Yukimura, 130 Hawai'i 1, 304 P.3d 1182 (2013) (holding that a family court cannot substantively modify a divorce decree's apportionment of capital gains tax liability, unless pursuant to HFCR Rules 52(b), 59, or 60). There appear to be previous cases in which amended findings and conclusions have been entered pursuant to HFCR Rule 52(a) after the filing of a notice of appeal. See, e.g., Ferreira v. Ferreira, No. 28912 (App. Nov. 18, 2009) (mem.); R.N. v. B.F., No. 28241 (App. June 6, 2008) (SDO); In re Doe, No. 26276 (App. Mar. 9, 2005) (SDO). Also, allowing the entry of more detailed supplemental findings of fact and conclusions of law pursuant to HFCR Rule 52(a) as long as they do not substantively modify a family court's pre-decree rulings allows for a more informed and timely appellate review. One of the purposes for the statutory requirement that an agency set forth its findings of fact and conclusions of law is to enable judicial review. Dupree v. Hiraga, 121 Hawai'i 297, 309 n.14, 219 P.3d 1084, 1096 n.14 (2009). Also, "findings of fact promote reasoned decisions and meaningful appellate review." State v. Hussein, 122 Hawai'i 495, 505 n.15, 229 P.3d 313, 323 n.15 (2010).

submissions verbatim, suggesting the family court had not even read the submissions.  For this assertion, DL cites to two out-of-state cases.  In a Florida case, West v. West, 228 So.3d 727, 728 (Fla. Ct. App. 2017), the Florida Court of Appeals stated that an "appearance of impropriety exists" when a trial judge adopts a party's proposed judgment verbatim, especially where the judge did not orally announce findings or rulings during or at the end of trial.  West, 288 So.3d at 728-29.  West, in turn, is based on the Florida Supreme Court's holding in Perlow v. Berg-Perlow, 875 So.2d 383 (Fla. 2004), which had set forth guidelines for dealing with proposed "judgments" submitted by parties in divorce proceedings.  West, 228 So.3d at 729.  Perlow makes it clear, however, that Florida does not have a rule similar to HFCR Rule 52(a), which authorizes a trial court to request findings of fact and conclusions of law, although it appears such requests were not uncommon.  Perlow, 875 So.2d at 388.[9]

---

[9]     DL also cites to the Georgia case Floyd v. Gibson, 788 S.E.2d 84, 87-88 (Ga. Ct. App. 2016) for the proposition that if the record contains indicia, such as repeated typographical errors, that suggest the judge did not even read the submissions, the findings should be rejected and the judgment vacated.  Instead, this case appears to stand for a related proposition that an appellate court "cannot apply the appropriate deferential standard of review to the trial court's findings of fact when it is entirely unclear that the trial court even made any such findings, or where it failed to base its findings, to the extent any were made, on contemporaneous evidence."  Floyd, 788 S.E.2d at 88.

In contrast, HFCR Rule 52(a) specifically allows a family court "to order the parties or either of them to submit proposed findings of fact and conclusions of law[.]"  In addition, there are no Hawaiʻi appellate cases prohibiting a trial court from adopting findings of fact and conclusions of law submitted by counsel, as long as they are not clearly erroneous or wrong. For example, in Molokoa Village Development Co., v. Kauai Elec. Co., 60 Haw. 582, 593 P.2d 375 (1979), we stated that, "although with only a few exceptions the trial court adopted findings of fact prepared by counsel for Molokoa, the findings must stand if not clearly erroneous."  60 Haw. at 592, 593 P.2d at 382.[10]

Based on the high volume of cases heard in our family courts, it is unrealistic for our family court judges to prepare their own findings of fact and conclusions of law in every case. Although it would be preferable for the record to show that the family court reviewed proposed findings of fact and conclusions of law before adopting them verbatim, our law does not prohibit wholesale adoption of proposed findings of fact and conclusions of law as long as they are not clearly erroneous or wrong as a

_____

[10]    In Molokoa, we cited to Wright and Miller, Federal Practice and Procedure, Civil § 2578 (1971), governing "Preparation of Findings" under Federal Rules of Civil Procedure ("FRCP") Rule 52 (2009).  FRCP Rule 52 also does not have a provision specifically allowing a court to request that the parties submit proposed findings.

matter of law. In addition, there is no basis for DL's assertion that the family court did not read the submissions within the three days that elapsed between their submission and adoption; counsel should not make unfounded assertions.

Therefore, DL's assertion that the 4/26/18 FOFs/COLS should be rejected because the family court adopted CL's submissions lacks merit.

**B.     The ICA did not err in affirming the family court's denial of DL's motion to disqualify CL's counsel and law firm**

In the second question on certiorari, DL argues the ICA erred in affirming the family court's denial of DL's motion to disqualify CL's counsel and law firm.

HRPC Rule 1.10(c), Imputation of Conflicts of Interest, generally states:

> When a lawyer becomes associated with a firm, and the lawyer is prohibited from representing a client because the lawyer's former firm has represented a person whose interests are materially adverse to that client in the same or a substantially related matter, other lawyers in the firm may not thereafter represent the client unless:
> (1) the disqualified lawyer did not participate in the matter and has no confidential information regarding the matter;
> (2) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
> (3) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule.

Comment 4 to HRPC Rule 1.10 states, however, that HRPC Rule 1.10 does "not necessarily prohibit representation by others in the

law firm where the person prohibited from involvement in a matter is a nonlawyer[.]"  Instead, such nonlawyers "may be screened where effective from any personal participation in the matter to avoid communication to others in the firm of confidential information that both the nonlawyer and the firm have a legal duty to protect."  HRPC Rule 1.10 cmt. 4.

DL's motion to disqualify involved a paralegal and not an attorney.  Even if the paralegal had been exposed to and had the opportunity to acquire confidential information during employment at DL's prior law firm, pursuant to HRPC Rule 1.10 Comment 4, CL's law firm would not necessarily be prohibited from representing CL if an effective screen had been put in place.[11]

According to evidence the family court found credible, CL's law firm was aware of the conflict at the time of the paralegal's hiring and had put in place procedures that provided effective screening "from any personal participation in the matter to avoid communication to others in the firm of confidential information that both the nonlawyer and the firm have a legal duty to protect."  See HRPC Rule 1.0(l).

---

[11]    "Screened" is further defined by HRPC Rule 1.0(l) (2014) to mean, "the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect the information that the isolated lawyer is obligated to protect under these Rules or other law."

Accordingly, the ICA did not err in ruling the family court did not abuse its discretion, i.e., disregard rules or principles of law or practice to the substantial detriment of a party litigant, when it denied DL's motion to disqualify.

**C.    The ICA did not err in affirming the family court's order awarding to CL sole physical custody of the parties' children and allowing CL to relocate the children to Arizona**

With respect to DL's third and last question on certiorari, as indicated in Section II.C above, the ICA carefully reviewed the family court's findings of fact and conclusions of law regarding custody and relocation, which were supported by substantial evidence.  For the reasons stated by the ICA, the family court did not err in awarding sole physical custody of the children to CL and allowing CL to relocate with the children to Arizona.  Therefore, this question on certiorari lacks merit.

## V.    Conclusion

For the reasons explained above, we therefore affirm the ICA's  May 3, 2019 judgment affirming the family court's (1) April 26, 2018 Amended Findings of fact, Conclusions of Law and Order Regarding:  June 21, 2017 Order Re:  Defendant's Motion for Pre-Decree Relief; March 13, 2016 Order Re:  Evidentiary Hearing; and March 16, 2018 First Amended Order Re:  Evidentiary Hearing, and (4/26/18 FOFs/COLs re child custody); and (2) the April 23, 2018 Findings of Fact, Conclusions of Law and order

Regarding Plaintiff's Motion to Disqualify Counsel (4/23/18

FOFs/COLs re motion to disqualify).

| | |
|---|---|
| Philip Leas | /s/ Mark E. Recktenwald |
| (Rebecca A. Copeland | |
| on the briefs | /s/ Paula A. Nakayama |
| and application) | |
| for Petitioner | /s/ Sabrina S. McKenna |
| | |
| CL | /s/ Richard W. Pollack |
| Respondent pro se | |
| | /s/ Michael D. Wilson |

